**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANDY BAADHIO, | |
| Plaintiff, | Civil No. 12-456 (JAP) |
| v. | |
| STATE OF NEW JERSEY, et al., | OPINION |
| Defendants. | |

**APPEARANCES:**

**RANDY BAADHIO**, Plaintiff pro se
524396
New Jersey State Prison
PO Box 861
Trenton, N.J. 08625

**PISANO**, District Judge

Plaintiff Randy Baadhio ("Plaintiff") seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.[1]

---

[1] Plaintiff initially submitted a petition for habeas corpus pursuant to 28 U.S.C. §2254 and included his conditions of confinement claims. See 11-7120 (JAP) Baadhio v. State of New Jersey, Docket Entry No. 1. By Order dated January 25, 2012, this Court severed the conditions of confinement claims from the habeas claims and opened the instant case. See 12-456 (JAP) Baadhio v. State of New Jersey, Docket Entry No. 2. When Plaintiff filed his amended complaint, pursuant to said order, he failed to submit a complete in forma pauperis application and this Court denied his application and administratively terminated the action. (Id. at Docket Entry No. 10.) Thereafter, Plaintiff submitted a complete in forma pauperis application. (Id., Docket Entry No. 11.) As such, this Court will re-open the case to review the complaint.

At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint should proceed in part at this time.

**I. BACKGROUND**

Plaintiff, incarcerated at New Jersey State Prison in Trenton, New Jersey at the time of filing, brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Gary Lanigan, Commissioner of the New Jersey Department of Corrections; Charles A. Warren, Administrator of New Jersey State Prison; the New Jersey Department of Corrections; Dr. Hasson, Director of the Medical Unit at New Jersey State Prison; University of Medicine and Dentistry of New Jersey ("UMDNJ"); John Oszwart, a Discipline Hearing Officer; Dr. Zimmerman, Crisis Center psychiatrist; Defendants X1, X2, X5; Dr. Bernstein, Administrator at New Jersey State Prison's Crisis Center; Virginia Gee, UMDNJ social worker; Psychologist Wiegand; current SASRC Chairman; Dr. Whasuku; Dr. Lieberman; Carol Gallagher; Evelyn Davis, Central Reception and Assignment Facility ("CRAF") administrator; "Plumbing crew" at New Jersey State Prison; and the lieutenants and sergeants of unit 2EE at New Jersey State Prison.  The following factual allegations are taken from the complaint and subsequent filings, and are accepted for purposes of

this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that from October 21, 2011 through November 17, 2011, upon his arrival at CRAF, he was placed in pre-hearing detention status based on the fraudulent representations by Defendants X1 and X2.  He states that he was denied bed linens for four days upon his arrival, as well as heat for three days.

After a psychiatric evaluation, Plaintiff was transferred to New Jersey State Prison on October 25, 2011[2] and placed in a close custody unit, despite the fact that he had been deemed to be non-violent and non-suicidal by Dr. Rossi.  In the close custody unit, Plaintiff alleges that he was denied bed linens and corrective glasses.  For over a week, he claims he was denied utensils, a changed of clothes, recreation, pen, paper, reading material, correspondence, soap, little or no toilet paper, and denied a toothbrush and toothpaste for over three weeks.  He states that he was held in a cell and forced to shower in areas with blood and feces on the walls.  Plaintiff further alleges that he was without running water in his cell for eleven days.

Plaintiff states that he suffered from rectal and navel bleeding which went unaddressed for months and he was denied medical call forms.  Plaintiff states that on several occasions,

---

[2] The Court notes that the dates contained in the Complaint regarding Plaintiff's time at CRAF and New Jersey State Prison appear to be overlapping.

the medical professional defendants came to his cell for a medical visit, however, they failed to open his cell door.  Instead, they only examined him from outside the cell door, which resulted in their failure to treat his issues.  On January 27, 2012, Defendant Gallagher prescribed a hemorrhoid cream for Plaintiff's issue, and he states that the relief was immediate.

Plaintiff argues that the "open door" policy in administrative segregation, which requires a sergeant to be present before the doors can be opened, is problematic and that said policy resulted in a delayed medical response for another inmate on several occasions.

In an addendum to his complaint, Plaintiff alleges that in March 2012, the cane that he uses due to his polio, went missing and was being held in Defendant Bernstein's office.  Plaintiff was forced to walk around without his cane, causing him excruciating pain.  Further, Plaintiff states that in May 2012, the navel and rectal infection Plaintiff previously complained about, returned.  Plaintiff requested medical attention from anyone besides Defendant Gallagher and requested that he be seen in the clinic, not through his cell door.  When Defendant Gallagher came to see Plaintiff on May 9, 2012, Plaintiff refused medical attention.  Plaintiff claims that in retaliation, his back pain medication was cancelled on May 25, 2012.  Plaintiff alleges that he is in extreme pain.

On June 15, 2012, Plaintiff filed an application for a temporary restraining order ("TRO") requiring Defendants to see

Plaintiff in the clinic for his navel and rectal infections and to re-instate his pain medication. Plaintiff also requests a TRO preventing the Department of Corrections from transferring him to another prison.

**II. DISCUSSION**

   **A. Legal Standard**

      **1. Standards for a Sua Sponte Dismissal**

The Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) and § 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal,

129 S.Ct. 1937 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S.Ct. at 1948). The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See Iqbal, 129 S.Ct. at 1949-50. See also Twombly, 505 U.S. at 555, & n. 3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008))

  **2. Section 1983 Actions**

 A plaintiff may have a cause of action under 42 U.S.C. § 1983

6

for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

**B. Analysis**

**1. Conditions of Confinement**

"The Eighth Amendment's prohibition on 'cruel and unusual punishment' ... imposes on [prison officials] a duty to provide 'humane conditions of confinement.'"  Betts v. New Castle Youth Dev., 621 F.3d 249, 256 (3d Cir. 2010)(quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  Id. (quoting Hudson, 468 U.S. at 526–27).  An alleged deprivation, to rise to the level of an Eighth Amendment

7

violation, must result in the denial of the minimal civilized measure of life's necessities. <u>Id.</u> at 835.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>Counterman v. Warren Cnty. Corr. Fac.</u>, 176 Fed.Appx. 234, 238 (3d Cir. 2006). The objective component mandates that only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. <u>See</u> <u>Farmer</u>, 511 U.S. at 835 (1994); <u>Wilson</u>, 501 U.S. at 303. A plaintiff may satisfy the objective component of a conditions-of-confinement claim by showing that the conditions alleged, either alone or in combination, deprive him of the minimal civilized measure of life's necessities, such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347–48 (1981). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." <u>Rhodes</u>, 452

8

U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. Id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

The Court finds that the allegations as set forth by Plaintiff regarding his conditions while at CRAF do not rise to the level of a serious constitutional deprivation. Plaintiff has alleged no facts to show that he has been deprived of basic hygiene and shelter needs for an extended period of time. Indeed, his allegations involve only loss of bed linens and heat for a very short period of time. Therefore, this claim will be dismissed against all defendants for failure to state a claim.[3] With regard

---

[3] To the extent Plaintiff is attempting to bring a claim against Defendants X1 and X2 for filing false reports about him, which resulted in his placement in pre-hearing detention when he arrived at CRAF, that claim is also dismissed. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation). See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided"). To the extent Plaintiff is attempting to allege a due process violation, Plaintiff has not alleged sufficient facts under Iqbal to allow said claim to proceed. As such, it will be dismissed without prejudice.

9

to his conditions of confinement claims while at New Jersey State Prison, the Court finds that Plaintiff has alleged sufficient facts to allow that claim to proceed at this time.

### 2. Denial of Medical Care

Plaintiff alleges that Defendants denied and delayed access to medical care for his navel and rectal bleeding.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes, 452 U.S. at 344-46. This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize

the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). For purposes of this Opinion, the Court will assume that Plaintiff's navel and rectal bleeding and back pain constitute serious medical conditions.

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer, 511 U.S. at 837-38. Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment

concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.... Finally, deliberate indifference is demonstrated [w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  <u>Lanzaro</u>, 834 F.2d at 346 (citations omitted).  "Short of absolute denial, if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."  <u>Id.</u> (citations omitted).  "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[ ] in interminable delays and outright denials of medical care to suffering inmates.'"  <u>Id.</u> at 347 (citation omitted).

At this juncture, based on his statements regarding his medical issues and the delays and denials of treatment, Plaintiff has alleged sufficient facts to allow his Eighth Amendment medical

12

claim to proceed against the medical professional defendants.

### 3. "Open Door" Policy

Plaintiff's complaint contains a paragraph concerning the policy of requiring a sergeant to be present before a door can be opened in administrative segregation.  However, he does not allege any facts as to how, if at all, this policy has affected him. Rather, he only states facts related to another inmate by the name of Kato.  To the extent Plaintiff's challenges could be construed as claims asserted on behalf of inmate Kato, Plaintiff lacks standing to raise these challenges and it will be dismissed with prejudice.  See Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990) (explaining that to stand in for another as plaintiff, the purported plaintiff must among other things provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action).  Likewise, to the extent that Plaintiff alleges that his rights have been somehow violated by this policy, it is not clear what constitutional claims he is attempting to raise.  As such, this claim will be dismissed without prejudice.

### 4. Department of Corrections

Plaintiff's allegations against the Department of Corrections fail to state a cognizable claim.  A suit by private parties seeking to impose liability which must be paid from public funds in a State treasury is barred from federal court by the Eleventh

Amendment, unless Eleventh Amendment immunity is waived by the State itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974); N.J. Retail Merchs. Ass'n v. Sdiamon-Eristoff, 669 F.3d 374, 388 (3d Cir. 2012). Thus, the Eleventh Amendment protects States and their agencies and departments from suit in federal court regardless of the type of relief sought. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Similarly, absent consent by a State, the Eleventh Amendment bars federal court suits for money damages against State officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332 (1979). Correspondingly, neither States, nor governmental entities that are considered arms of the State for Eleventh Amendment purposes are persons within the meaning of § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 70-71 and n. 10 (1989); Grabow v. Southern State Corr. Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983). Thus, Plaintiff's claims against the Department of Corrections will be dismissed with prejudice.[4]

---

[4] Similarly, it appears that the State of New Jersey was inadvertently included as a defendant on the docket as a result of Plaintiff's naming of the State of New Jersey as a respondent in his habeas action. As such, the Clerk of the Court is advised to remove the State of New Jersey as a defendant in this action.

14

### 5. Defendants Warren, Lanigan, and "D.O.C. Division of Operations Director"

Further, it appears that Plaintiff is asserting a claim of liability against Commissioner Lanigan, Administrator Warren and the "Director of D.O.C. Division of Operations" on the sole basis that they are supervisors, in some capacity, of the New Jersey State Prison, where the events alleged took place. The complaint fails to allege any facts in support of a claim based on supervisor liability. Accordingly, the complaint should be dismissed without prejudice as against Defendants Lanigan, Warren, and the "Director of D.O.C. Division of Operations" pursuant to Iqbal.

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties"). In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to

Bivens[5] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948.  Thus, each government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct.  See id., 129 S.Ct. at 1949.

Here, there are no allegations of any wrongful conduct with respect to Defendants Lanigan, Warren, and the "Director of D.O.C. Division of Operations", other than in their capacities as supervisors.  Accordingly, any § 1983 claims must be dismissed without prejudice as against these defendants.

### 6.  Motion to Produce Documents and to Film Evidence

In his Amended Complaint, Plaintiff requests several documents from Defendants.  He also filed a separate request to "film evidence" at the prison.  (Docket Entry No. 13.)  However, discovery has not yet even begun and as such, these requests will be denied as premature.

### 7. Motion for TRO

On June 15, 2012, Plaintiff filed an application for a TRO and Order to Show Cause requesting that the prison medical staff be

---

[5] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

required to treat his recently-returned navel and rectal infections and to stop prison officials from transferring him to another prison. (Docket Entry No. 15.) This Court denied said request because at that time, the case was closed. (Docket Entry No. 16.) To the extent Plaintiff wishes to renew his application, now that the case is re-opened pursuant to this opinion and order, the Court finds that said request would be denied.

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted). To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F.Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990).

In this case, Plaintiff has not demonstrated that he will likely succeed on the merits. By his own admission in his application, since filing his medical request form on May 12, 2012,

prison medical personnel have come to his cell to address his issues.  However, Plaintiff refused to be seen by those individuals.  Further, Plaintiff states that in response to the medical personnel's decision to discontinue his back pain medication, he has decided to voluntarily cease all medications.  Since Plaintiff has refused to allow the medical personnel to address his issues, even though they came to his cell pursuant to his request, he has not shown that he will likely be successful in showing deliberate indifference on the part of these defendants.  As such, his request for a TRO will be denied without prejudice at this time.

With regard to his request to restrain Defendants from transferring him, Plaintiff's request will also be denied because he is unable to show likelihood of success on the merits.  An inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level, security classification, or place of confinement.  See Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005) (finding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976).  The custody placement or classification of state prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts."  Meachum, 427 U.S. at 225.  Governments, however,

may confer on inmates liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Thus, a convicted inmate such as Plaintiff has no liberty interest arising under the Due Process Clause itself in remaining in a prison facility of his choosing. See Hewitt v. Helms, 459 U.S. 460, 466-67 & n. 4 (1983); Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).

### 8. Physical Evidence

Since the filing of his complaint, Plaintiff has sent several boxes to this Court containing what Plaintiff describes as evidence, including, among other things, samples of rust, a used bed sheet, soap and toothbrush. Plaintiff is advised that it is unnecessary for him to submit any physical evidence to the Court at this time and he should refrain from doing so unless he expressly seeks and receives permission from the Court.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's conditions of confinement claim regarding his time at CRAF are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff's conditions of confinement claim regarding

his time at New Jersey State Prison and his medical claims may proceed.  Plaintiff's claims regarding the "open door" policy as it relates to inmate Kato are dismissed with prejudice.  His claims regarding the "open door" policy as it relates to Plaintiff are dismissed without prejudice.  The Department of Corrections is dismissed with prejudice.  Defendants Lanigan, Warren, and "Director of D.O.C. Division of Operations" are dismissed without prejudice.  Plaintiff's discovery requests are denied without prejudice as premature.  Plaintiff's request for a TRO is denied without prejudice.

Plaintiff may move to file an amended complaint to correct the deficiencies, and to allege sufficient facts to demonstrate the plausibility of the dismissed claims, as outlined in Iqbal, and in accordance with this Opinion.  Plaintiff's motion to amend must adhere to the court rules.[6]  An appropriate order follows.

Dated: June 26, 2012

/s/ JOEL A. PISANO
JOEL A. PISANO
United States District Judge

---

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.